THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS MARTÍNEZ BRITO, Defendant and Appellant.

No. CR-70-9.       Decided December 17, 1970.

*Jorge A. Vera Vélez* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant, Luis Martínez Brito, was accused and convicted of six violations of § 29 of the Narcotics Act

(24 L.P.R.A. § 974z), consisting of two charges of selling, two of concealing and transporting, and two of possession and holding of marihuana. His arrest was performed by a raid where 26 persons were arrested. He was sentenced to serve from 7 to 15 years in the penitentiary for each charge, to be served concurrently.

He assigns on appeal that the trial court erred (1) in denying the motion for a new trial introduced when appellant found out after the verdict about the extraneous influences exercised over the jury by a member of the jury panel; (2) in not ordering the postponement of the trial because the appearance of a participant informer was necessary and in not ordering the prosecuting attorney to exhaust the possible efforts to achieve his true identity and address; (3) in refusing to postpone the hearing of the case on account of that the raid had had a great prominence in the communication media and that under such circumstances defendant would not be before an impartial jury and would not have the guarantees of a fair and impartial trial; and (4) in charging the jury that the evidence of alibi "should clearly establish that defendant was not at the place where the events occurred and was in another place."

For the reasons set forth hereinafter, we conclude that he is not correct.

The Solicitor General correctly resumes the facts of the case in relation with the said assignments in this manner:

"Once the case was set for trial the postponement was requested on the ground that the country's press gave it prominent coverage and that a columnist of the newspaper 'EL MUNDO' had reported that the Mayor of Manatí had bailed the arrested persons. Also, the need to procure the name and address of a witness for the prosecution who at the preliminary hearing identified appellant before the undercover agent as the person who was engaged in the traffic of narcotics was alleged in another motion to postpone. It was indicated that said witness would be essential if the possible defense of entrapment would

arise. These motions were denied by the trial court and they proceeded to hear the cases on the merits.

"The facts which gave rise to the arrest and prosecution of appellant occurred in Manatí during October 8 and 18, 1965. (Tr. Ev. 67 to 78, part I.) The transaction of October 8 was performed in Francisco Alvarez Street, Manatí, at the pool rooms Tibidabo and La Nueva Barrita at 4:30 in the afternoon. When the undercover agent, Pedro Maldonado Olivo, arrived at the place of the events defendant told him 'I have some' referring that he still had marihuana cigarettes and sold him three for two dollars. (Tr. Ev. 67, part I.) The transaction of October 18 was performed at the business known as El Cialeño and Yardito's Place at about 5:30 in the afternoon on Eugenio Sánchez López Street, Manatí. The agent asked appellant whether he had seen Lonchito Román and Aulet Seda and the latter answered no. Immediately he asked him whether he wanted some 'grass' referring to marihuana. He sold him three cigarettes for two dollars. He went to his house which was two or three houses away to look for the cigarettes, returning in about three minutes. The agent had known appellant during another transaction performed on October 5, where the former had been identified by informer Raymond Manhattan. (Tr. Ev. 64, part I.) The arrest was performed on February 26, 1966. The trial having been set for May 12, 1966, appellant requested without success the continuance of the same for the afore-alleged reasons. When the trial was held, although the offense of alibi had not been announced, Rule 74 of the Rules of Criminal Procedure, the trial court allowed appellant to introduce evidence of alibi to establish that on October 8, 1965 he was at the Doctor's Center from two o'clock in the afternoon until ten o'clock at night taking care of his wife who had given birth by a cesarian section on October 6 and that on the 18th of the same month he had been working for construction contractor Jorge Luis Franco at the residence of 'Miss Ramos Orengo', from seven o'clock in the morning until six fifteen in the afternoon. (Tr. Ev. 207 *et seq.* and 191 *et seq.*, part II.)

"Once appellant was convicted and sentenced he filed a motion for a new trial grounding the same on the alleged information which he alleged was true that in the verdict of the jury there were influences foreign to a court of justice. It was indicated by appellant's counsel that a member of the jury had per-

formed investigations on his own and without authorization from the court before the verdict was rendered. The trial court denied said motion."

The first assignment is based on a sworn statement of one of appellant's counsel to the effect that Inés Ramos Ortega informed him that one of the jurors in the case, Ramón Rodríguez Espinosa, had visited her while the case was being heard and asked her whether appellant had worked at her house and whether the former's parents had visited her on that same day; that he tried to continue questioning her about that matter and she evaded the topic, and that said lady refused "categorically" to give a sworn statement about the particular. In his motion for reconsideration of July 28, 1966, appellant alleged before the trial court that when he appeared on the 8th of said month and year to the act of the reading of the sentence in these cases appellant informed the trial court of the foregoing particulars and on the ground thereof he requested again a new trial but the trial court denied said motion.

The evidence of alibi consisted, in part, of the testimony of contractor Franco and that of appellant to the effect that on October 18, 1965, date on which, according to one of the informations, appellant had in his possession, concealed and transported and sold marihuana in Manatí, appellant was working for said contractor as a plumber at the residence of Mrs. Ramos Ortega in Urbanización San Salvador, Manatí.

Appellant maintains, in synthesis, that the trial court abused its discretion in not ordering an investigation of the said actions of said member of the jury and in not considering on its merits appellant's motion for new trial to determine whether or not the foreign influences were prejudicial to defendant's rights.

Rule No. 188 of the Rules of Criminal Procedure which governs the discretional granting of a new trial provides that

it will be granted when the jury has received evidence out of the court other than that resulting from a view of the premises and as a consequence thereof the substantial rights of the defendant are impaired.

In view of the fact that from the sworn statement it does not appear that Mrs. Ramos Ortega had given juror Rodríguez the information which he requested from her as to whether appellant had worked at her house, it is obvious that the steps taken by said juror, improper as it was, could not cause any prejudice to appellant.

The circumstances in the cases of *Remmer* v. *United States*, 347 U.S. 227 (1954) and *Rubenstein* v. *United States*, 227 F.2d 638, 643 (10th Cir. 1955), on which appellant relies, are different from those of the case at bar. In *Remmer, supra,* petitioner found out after the verdict that someone had communicated with the person who was elected foreman of the jury and remarked to him that he could profit by bringing in a verdict favorable to petitioner, which was reported by said person to the judge and by the latter to the prosecuting attorneys. As a result thereof the Federal Bureau of Investigation (FBI) was ordered to investigate the matter and to render a report. Said report was considered by the judge and the prosecuting attorneys alone, who concluded, that said communication was made in jest. These facts having been alleged in a motion for new trial, the same was denied without a hearing. The court concluded that this action of the trial court was erroneous and remanded the case to hold a hearing for the purpose of determining whether the incident was harmful to petitioner. The National Supreme Court stated in this case that "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during

the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." In this case it was established that there was an offer to a member of the jury to induce him to bring in a partial verdict and that there was an investigation which could "impress the juror and is very apt to do so unduly"; and "A juror must feel free to exercise his functions without the FBI or anyone else looking over his shoulder"; that "The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."

In *Rubenstein, supra*, the circumstances are also different as herein the members of the panel, from which the jury in this case was selected were interviewed, interrogated, and questioned for the purpose of determining whether some offenses had been committed by persons seeking to interfere with the due administration of justice in other cases in the same court. Therefore, it had to be determined whether such contact could have affected the calm equilibrium of timorous members of the panel or those with such sensitive temperaments that they could not exercise their judgment with the same impartiality that they would have in the absence of the contact. To these effects petitioner, had to be given, by a hearing, the opportunity of proving whether in reality such contacts could provoke a reaction in the jurors of this case prejudicial to petitioner.

In the case at bar, the contact with the member of the jury was not performed by a stranger but by the member of the jury himself. The lady to whom the member of the jury in question addressed himself stated that he only asked her whether appellant had worked at her house. The precise day

when he did it was not indicated. Said lady stated that "juror Ramón Rodríguez Espino tried to continue examining her about the matter but she skillfully avoided the matter." It was also testified under oath that said lady refused categorically to testify about the visit which said juror made to her and about the conversation which he had with her.

■ It does not appear from the allegations of the motion for a new trial, nor from the sworn statement, whether Mrs. Ramos Ortega gave any information to Rodríguez Espino. On the contrary, the sworn statement informs that she *avoided the topic* about whether or not appellant performed any work in her house: No time or date when such work could have been performed was specified. Under these conditions no evidence or indication about information requested and submitted to the member of the jury in question which in any manner could have been prejudicial to appellant has been offered.

2.—It is argued that the trial court erred in not ordering the postponement of the hearing of the case based on the petition of the defense that the appearance of a participating informer was necessary.

At the close of the evidence for the prosecution, counsel for the defense requested the trial court to give him information by the prosecuting attorney, concerning Raymond Manhattan, his address, the correct name of Raymond Manhattan, and the place where he could be found for the purpose of determining, whether he was going to be used as witness for the defense, since another witness testified that in the transaction of October 5, 1965, this person known as Raymond Manhattan had been present, that he participated; that "this is a person who was present, a material witness, and which the American jurisprudence calls 'the silent witness', that is, the witness who is mentioned by everyone in court but nobody knows."

■ The prosecuting attorney stated that he did not have it as they were looking for the said Manhattan since he was charged for a drug case and they had not been able to find him; that that person was not a participant informer, nor an informer. The record establishes that the Internal Revenue Agent, Pedro Maldonado Olivo, testified that when on October 5, 1965, he talked for the first time with appellant "I had the occasion of going with a subject known as Raymond Manhattan." Afterwards he repeated that he met appellant for the first time on October 5, 1965, when "together with Raymond Manhattan had the opportunity of talking with defendant at a street which faces Teatro Taboas in Manatí." The delinquent transactions which gave rise to appellant's prosecution were performed on October 8 and 18, 1965, and it does not appear from the evidence that Raymond Manhattan had been present nor participated therein. Therefore, we cannot agree with appellant that Manhattan was a participant informer whose identity had to be disclosed. *People* v. *López Rivera*, 91 P.R.R. 672 (1965).

■ 3.—The trial court did not err in refusing to postpone the hearing of the case because of the fact that the raid where appellant was arrested "had a great prominence in the local communication media and under such circumstances defendant would not be before an impartial jury."

In support of the postponement on account of the publicity appellant offered in evidence the publication of the newspaper "El Mundo" of February 25, 1966.

There was no evidence that said publicity was as massive, compenetrative, and prejudicial, which converted the trial in a carnival in *Sheppard* v. *Maxwell*, 384 U.S. 333 (1966) or which was considered objectionable in *Rideau* v. *Louisiana*, 373 U.S. 723 (1963), or in *Estes* v. *Texas*, 381 U.S. 532, 565 (1964). On the contrary, as the Solicitor General correctly, in our judgment, reports, "In the picture where defendant appears covering his face he was identified by another name.

The interrogatory to which the jurors were submitted clearly established that they did not have a formed opinion about the facts of the case and that they were ready to try defendant on the basis of the evidence which was to be introduced at the trial. Juror Luis Zeno stated that he had no knowledge of the facts through the press, radio, or television. Reynaldo Domínguez Martínez, who testified having discussed the case with 20 or 30 persons in Barceloneta, on the grounds of the press, radio, and television reports, was peremptorily challenged by the prosecuting attorney. Ramón Rodríguez Espino, defendant's neighbor, and who testified having had knowledge of the press reports in connection with the case, stated that he would try the case with absolute impartiality. Ángel M. Román had not read about the news of the case nor knew defendant, but was peremptorily challenged by the defense upon stating the presumption of guilty towards defendant. Other jurors indicated not having had news about the case."

4.—As to the evidence of alibi the trial judge's instruction to the jury was the following:

"Now, defendant on his part tells you 'I, on that day to which this man refers, October 8 and 18, was not at the place where it is alleged I was, and I had, transported, and sold the cigarettes.' That on October 8 he was at the hospital 'with my wife,' and he testified that he was there from three o'clock in the afternoon until ten thirty at night. That on October 18 he was working with a man at a work he was performing, a work at Urbanización Santa Bárbara, from where he left at about six in the afternoon.

"This is what is called alibi. Notice that it is a question of fact, only of fact, which you must determine. Either you believe the evidence for the prosecution or you believe the evidence for the defendant.

"In general terms, according to law, alibi is the defense which is established to prove that the accused was at a different place from that where the offense was committed, at a time when he could not have been at the place of the events at the very moment when said offense was committed.

"If the evidence introduced to establish an alibi does not clearly show that defendant was at the place where he alleges precisely at the very moment of the occurrence of the facts or that he could not have been at the scene of the crime at the time when it was being committed, the alibi has not been established. In other words, if defendant could have been at the place where he alleges he was, and however, he could also have been at the scene of the crime at the time when it was committed, the alibi does not exist.

"However, I must charge you that defendant does not have to prove the alibi beyond a reasonable doubt. If he establishes with his evidence a reasonable or grounded doubt, he should be acquitted. To require him evidence beyond reasonable doubt would be to require him proof of innocence. If defendant establishes with his evidence, proof, I mean, an alibi as to the evidence presented by the prosecuting attorney, that doubt is in defendant's benefit and he should be acquitted."

█ It is alleged that this instruction is erroneous, in synthesis, because "For the minds of the jury and for the majority of the people the meaning of clearly is: there is no doubt, *that it is definite, without any shadow of doubt which does not lead to believe any other thing*. This being the connotation given to the term *clearly* by the majority of persons, we deem that the judge in his instructions to the jury told them that defendant-appellant had to bring evidence about alibi which could not have the least shadow of doubt."

In support of this assignment he invokes the doctrine we established in *People* v. *Moreu Pérez*, 96 P.R.R. 59 (1968). But in this case what we held is that an instruction in the sense that if the jurors are convinced that the evidence of alibi is false or that it was fabricated, they can consider it as an admission of guilt constitutes a prejudicial error.

We do not believe that the first sentence of the fourth paragraph of said instruction has the scope which appellant seeks to give it. Its actual scope is defined in the second sentence of said paragraph in saying "In other words," that defendant could have been at the place where he alleges he

was and however, he could also have been at the scene of the crime at the time when it was committed.

Although the term *clearly* in this instruction is not fortunate, it is not improper to the extreme of having caused a substantial prejudice to appellant's rights as it was immediately explained in the sense that defendant could have been at a certain place on the day of the events and be at the scene of the crime at the precise moment when it was committed. The purpose of the explanation was simply to call the jury's attention to a reality to the effects of being in a better condition to weigh the scope and weight of the evidence of alibi. In any event in the following paragraph of the instruction it was made very clear, with due emphasis, that the evidence of alibi only has to establish a reasonable doubt since to require evidence beyond reasonable doubt would be to require evidence of defendant's innocence.

In view of the foregoing, the judgments rendered in these cases by the Superior Court, Arecibo Part, on July 8, 1966, will be affirmed.

Mr. Chief Justice Negrón Fernández as well as Mr. Justice Santana Becerra did not participate herein.